

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| PIEDMONT ROOFING *a/a/o William and Louise Barkley*, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 3:26-00847-MGL |
| AUTO-OWNERS INSURANCE COMPANY, | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO DISMISS

### I.    INTRODUCTION

Plaintiff Piedmont Roofing filed this suit against Defendant Auto-Owners Insurance Company (Auto-Owners) in the Sumter County Court of Common Pleas.  Auto-Owners removed the case to this Court.  Piedmont Roofing asserts rights as assignee of William and Louise Barkley (the Barkleys), who had a home insurance policy with Auto-Owners.

Auto-Owners filed a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. Piedmont Roofing filed a response in opposition, to which Auto-Owners filed a reply.

Having reviewed the motion, the response, the reply, and the record before the Court, it is the judgment of the Court Auto-Owners's motion will be denied.

## II.     FACTS AND PROCEDURAL HISTORY

Accepting the facts alleged in Piedmont Roofing's complaint as true, it contracted with the Barkleys to repair the roof of their home after it was damaged by hail on or about March 26, 2023. Complaint ¶ 3.  The Barkleys had a home insurance policy with Auto-Owners, and they filed a claim under the policy for the hail damage.  Complaint ¶¶ 11, 16.  They assigned their interest in the insurance policy to Piedmont Roofing on July 25, 2023.  Complaint ¶ 5.

According to the complaint, Auto-Owners inspected the property and determined the roof needed to be replaced, with an estimated cost of $28,364.02 for the main property and $7,813.92 for "other structures."  Complaint ¶¶ 17-18.  Auto-Owners, however, "has failed to tender payment for the remaining covered damages."  Complaint ¶ 20.

Piedmont Roofing seeks a declaratory judgment "confirming Plaintiff's right to recover under the subject policy."  Complaint ¶ 25.  It also brings a breach of contract claim as the Barkley's assignee under their insurance policy.  Complaint ¶¶ 30-32.  Auto-Owners' motion to dismiss followed.

## III.     LEGAL STANDARD

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]"  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To survive a motion to dismiss under Rule 12(b)(6), the complaint must have "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss for failure to state a claim, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). But, the Court need not "accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244.

## IV.     DISCUSSION AND ANALYSIS

### A.  Whether the claim is barred by S.C. Code Ann. § 40-59-30

Auto-Owners argues Piedmont Roofing's claim is barred by S.C. Code Ann. § 40-59-30. Motion at 3. That section provides in relevant part:

> [A] person or firm who first has not procured a license or registered with the commission and is required to do so by law may not . . . bring an action at law or in equity to enforce the provisions of a contract for residential building or residential specialty contracting which the person or firm entered into in violation of this chapter.

§ 40-59-30(B). Roofing is defined as a type of "residential specialty contracting." S.C. Code Ann. § 40-59-20(7)(f).

Based on "a simple license lookup search on the South Carolina Department of Labor, Licensing, and Regulation website," Auto-Owners asserts Piedmont Roofing "did not hold a valid residential builders license at the time it entered into the alleged contract, nor at the time it performed the work forming the basis of this action." Motion at 3. It reasons "[l]icensure is a mandatory condition precedent to performing the work, seeking compensation, and enforcing the purported contract," and thus Piedmont Roofing's claim fails as a matter of law. Motion at 3.

Piedmont Roofing disagrees. It contends, among other things, § 40-59-30(B) is inapplicable in this context because "the statute targets enforcement of construction agreements, not insurance policies." Response at 3. According to Piedmont Roofing, the statute is irrelevant

because it "does not seek to enforce any roofing contract" but rather "seeks benefits owed under the Barkleys' homeowners' insurance policy." Response at 3.

Under the statute, an unlicensed contractor is prohibited from "bring[ing] an action . . . to enforce the provisions of a contract" for roofing. § 40-59-30(B). Here, Piedmont Roofing, as assignee under the Barkleys' insurance contract, brings an action to enforce an insurance contract. Subsection 40-59-30(B) is therefore inapplicable, regardless of Piedmont Roofing's licensure status.

Auto-Owner's reliance on *Duckworth v. Cameron*, 244 S.E.2d 217 (S.C. 1978), Reply at 2, is misplaced. There a contractor sought to enforce a home construction contract against the owners with whom he had contracted to build the home. 244 S.E.2d at 217-18. That was plainly covered by the statute, *id.*, but it is inapposite here.

In reply, Auto-Owners also contends the "contract with William and Louise Barkley to complete roof repairs" is the "same contract . . . to assign the insurance claim itself, as well as the insurance proceeds," bringing it within the ambit of § 40-59-30. Reply at 3 (emphasis omitted). This construction of the statute, however, is too forced.

That the "same contract" performs these two functions is unimportant because the functions are plainly distinct, and the Court refuses to expand the scope of the statute in this hyper-technical way. *See S.C. Pub. Int. Found. v. Calhoun Cnty. Council*, 854 S.E.2d 836, 838 (S.C. 2021) (stating courts must interpret statutes "without resort to subtle or forced construction to limit or expand the statute's operation." (quoting *State v. Sweat*, 688 S.E.2d 569, 575 (S.C. 2010))). The Court will therefore decline to dismiss the claims on this ground.

As an additional reason for refusing to grant the motion on this basis, it was raised only in Auto-Owners's Reply rather than the initial motion. Arguments raised only in reply are waived.

4

*De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("Generally, 'new arguments cannot be raised in a reply brief' before the district court." (quoting *United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013))).

### B. Whether the claim is barred by S.C. Code Ann. § 40-59-25

Auto-Owners also argues the claims must be dismissed under S.C. Code Ann. § 40-59-25. Motion at 3-4.  The relevant portion of that statute provides: "A builder or contractor shall not represent or negotiate . . . on behalf of an owner or possessor of residential real estate on any insurance claim in connection with the repair or replacement of roof systems."  § 40-59-25(D)(1). Accordingly, Auto-Owners contends Piedmont Roofing "was prohibited from soliciting or obtaining the purported assignment of the insurance claim and benefits . . . ."  Motion at 3.

Piedmont Roofing suggests the statute "does not declare assignments void, nor provide any civil remedy that would extinguish an assignee's right to sue an insurer."  Response at 3.  It offers a "post-loss assignment is not 'representation' of the insured; it is a transfer of the insured's own claim rights to the assignee."  Response at 3.

The Court agrees with Piedmont Roofing.  The statute prevents contractors and builders from representing or negotiating "on behalf of an owner."  Here, however, Piedmont Roofing is not suing Auto-Owners "on behalf of" the Barkleys—it is suing in their shoes as their assignee but for its own benefit.  *See Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.*, 335 S.C. 635, 639, 518 S.E.2d 44, 46 (Ct. App. 1999) ("In South Carolina, it is well established that an "assignee . . . stands in the shoes of its assignor . . . ." (quoting *Singletary v. Aetna Cas. & Sur. Co.*, 316 S.C. 199, 201, 447 S.E.2d 869, 870 (Ct. App. 1994)) (omissions in original)).

Further, in South Carolina, a post-loss assignment of insurance benefits is permitted.  *PCS Nitrogen, Inc. v. Cont'l Cas. Co.*, 436 S.C. 254, 262, 871 S.E.2d 590, 595 (2022) ("We now adopt

5

the post-loss exception and hold insurer consent is not required for an assignment of liability insurance coverage rights made after a loss."). Based on the text of the statute, which is silent as to assignment, the Court is unwilling to read the statute in a way contrary to this general rule. Thus, the Court will decline to dismiss the claims on this second ground.

## V.     CONCLUSION

Having carefully reviewed the motion, the record, and arguments of the parties, Auto-Owners's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Signed this 1st day of June, 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
